USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1355 AUGUSTUS JOHN CAMELIO, Plaintiff - Appellant, v. AMERICAN FEDERATION, ETC., ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Godbold,* Senior Circuit Judge, ____________________ and Barbadoro,** District Judge. ______________ _____________________ Lee H. Kozol, with whom Debra Dyleski-Najjar, Penny Kozol _____________ ____________________ ___________ and Friedman & Atherton were on brief for appellant. ___________________ Andrew D. Roth, with whom Devki K. Virk, Bredhoff & Kaiser, ______________ _____________ __________________ P.L.L.C., William J. Hardy, Prescott M. Lassman and Kleinfeld, ________ ________________ ___________________ __________ Kaplan & Becker were on brief for appellees. _______________ ____________________ March 5, 1998 ____________________  ____________________ * Of the Eleventh Circuit, sitting by designation. ** Of the District of New Hampshire, sitting by designation. BARBADORO, District Judge. Augustus Camelio, a former BARBADORO, District Judge. _______________ employee and member of a labor union, brought this suit in state court against the union and fourteen members of its leadership. Camelio alleges that defendants had him fired from his job and forced him out of the union in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. 1961-1968 (West 1994 & Supp. 1997), and several provisions of Massachusetts state law. After defendants removed the case to federal court, the district court below dismissed Camelio's RICO claim and several of his state law causes of action for failure to state a claim. The court then remanded the remaining claims to state court. Camelio appeals the dismissal of his federal and state claims. We affirm in part, concluding that the court properly dismissed his RICO claim. We disagree, however, with the district court's decision to dismiss the state law causes of action. Rather than dismissing these claims, the court should have remanded them to state court along with the rest of the state law claims.  I. BACKGROUND1 I. BACKGROUND1 __________ Augustus Camelio served for nearly thirty years as General Counsel to Council 93 of the American Federation of State, County and Municipal Employees ("AFSCME"). In 1995, the United States Department of Labor and the Internal Revenue  ____________________ 1 As this appeal arises from a dismissal for failure to state a claim, we treat as true the complaint's well-pleaded allegations and construe those allegations in Camelio's favor. See, e.g., ___ ____ Miranda v. Ponce Fed. Bank, 948 F.2d 41, 43 (1st Cir. 1991); _______ ________________ Nodine v. Textron, Inc., 819 F.2d 347 (1st Cir. 1987). ______ _____________ -2- Service initiated investigations into Council 93's financial affairs that threatened to expose an ongoing scheme to misappropriate union funds by several members of the union's leadership. In response, Camelio alleges, defendants engaged in a concerted effort to thwart the two federal investigations. Camelio launched his own investigation into Council 93's financial affairs after learning of the federal inquiries. He claims that the individual defendants, all members of the union leadership, initially rebuffed his requests for information and later had him fired when he persisted with his investigation. Camelio continued to investigate even after he lost his job, this time relying on his right as a union member to inspect the union's books and records. He also announced his candidacy for vice president of AFSCME's northern New England region, a position that would allow him to further his investigation. In an attempt to thwart Camelio's candidacy and keep him from uncovering any evidence of defendants' criminal scheme, however, several of the individual defendants first threatened Camelio and ultimately forced him out of the union when their threats were not heeded.  Camelio sued Council 93 and the individual defendants in Massachusetts state court. He alleged claims based on Massachusetts law for breach of contract, wrongful discharge, tortious interference with contract, violations of the state constitution, intentional and negligent infliction of emotional distress, defamation, and false light invasion of privacy. He -3- also alleged that the individual defendants violated the federal RICO statute. See 18 U.S.C.A. 1962(c), 1964(c).  ___ Relying on Camelio's RICO claims, defendants removed the case to federal court in the District of Massachusetts. See ___ 28 U.S.C.A. 1441(a)&(b) (West 1994). Defendants then moved to dismiss for failure to state a claim. The district court allowed Camelio to amend his complaint to more specifically state his allegations, but ultimately concluded that he had failed to sufficiently allege a RICO claim against any of the defendants. The court also dismissed three of Camelio's state law claims against all defendants (breach of contract, negligent infliction of emotional distress, and false light invasion of privacy) and parts of two other claims as to some defendants (state constitutional violations and intentional infliction of emotional distress) before remanding the remaining claims to state court. II. DISCUSSION II. DISCUSSION __________ The district court dismissed Camelio's RICO claims because it concluded Camelio's complaint failed to sufficiently allege that his injuries were proximately caused by any of the predicate acts of racketeering on which the RICO claims were based. The court gave only a cursory explanation for its dismissal of the state law claims over which it retained jurisdiction. Camelio challenges both rulings.  A. The RICO Claims A. The RICO Claims _______________ In addition to criminal penalties, RICO provides a private right of action for treble damages and attorneys fees to -4- "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C.A. 1964(c). Camelio bases his RICO claims on 1962(c), which makes it unlawful for any person to conduct the affairs of an enterprise affecting interstate commerce by means of a "pattern of racketeering activity." 18 U.S.C.A. 1962(c). The Act also provides a list of actions and statutory violations that constitute "racketeering activity" and states that a "pattern" of such activity requires at least two acts of racketeering. 18 U.S.C.A. 1961(1)&(5). When a plaintiff attempts to base a civil RICO claim on  1962(c), that claim cannot succeed unless the injuries of which the plaintiff complains were caused by one or more of the specified acts of racketeering.2 Miranda v. Ponce Fed. Bank, _______ ________________ 948 F.2d 41, 46-7 (1991). Moreover, merely proving that the alleged predicate acts were a "cause in fact" of plaintiff's injuries will not be sufficient. Instead, 1964(c) requires proof that at least one of the defendant's predicate acts was the proximate cause of the plaintiff's injuries. Holmes v. ______ Securities Investor Protection Corp., 503 U.S. 258, 268 (1992). ____________________________________ Camelio alleges that defendants injured him by depriving him of his property interests in his job and his union membership. He asserts that defendants engaged in the following pattern of RICO predicate acts: misappropriation of funds in  ____________________ 2 Although it is not at issue in this case, this court has held that the same causation requirement applies to RICO conspiracy claims under 1962(d). Miranda v. Ponce Fed. Bank, 948 F.2d 41, _______ _______________ 48 & n.9 (1st Cir. 1991). -5- violation of 29 U.S.C.A. 501(c) (West 1985); attempted extortion in violation of the Hobbs Act, 18 U.S.C.A. 1961(1) (West 1984 & Supp. 1997); and obstruction of justice in violation of 18 U.S.C.A. 1510 and 1512 (West 1984 & Supp. 1997).3 In his complaint, Camelio asserts a myriad of claims in various combinations against fourteen individual defendants as well as against Council 93. For the sake of clarity of our analysis, we treat all of the defendants together, rather than individually.4 Accordingly, to satisfy RICO's causation requirement at the motion to dismiss stage, Camelio's complaint must allege that the injuries of which he complains were proximately caused by one or more of these predicate acts. We examine the sufficiency of the complaint's causation allegations by addressing each category of predicate acts in turn. 1. Misappropriation of Funds Claims ________________________________ Camelio claims that nine of the fourteen individual defendants misappropriated union funds in violation of 18 U.S.C.A. 501(c) by taking such funds for personal use and causing union money to be paid for legal services that were never rendered.  A violation of 501(c) qualifies as a predicate racketeering act under RICO. See 29 U.S.C.A. 1961(1). ___  ____________________ 3 Camelio alleges these violations in various combinations against each of the fourteen individual defendants. In no event does he allege less than two violations against any one defendant. 4 For the sake of clarity, we treat Camelio's allegations against the defendants collectively. -6- However, even if we assume that Camelio has sufficiently alleged that defendants violated 501(c), these violations cannot satisfy RICO's causation requirement because the connection between the violations and Camelio's injuries is insufficiently close to say that one proximately caused the other. See Miranda, ___ _______ 948 F.2d at 47 (bribery not cause of plaintiff's job loss); Pujol _____ v. Shearson/American Express, Inc., 829 F.2d 1201, 1205 (mail and _______________________________ wire fraud not proximate cause of plaintiff's job loss); Nodine, ______ 819 F.2d at 349 (mail and wire fraud not cause of plaintiff's job loss). In other words, even if defendants did violate 501(c) by stealing union funds, their misappropriations were too far removed from Camelio's loss of his job and his union membership to serve as the proximate cause of his injuries. 2. Extortion Claims ________________ Camelio continued his investigation after he lost his job, relying on his right as a union member to inspect the union's financial records. See 29 U.S.C.A. 431(c) (West ___ 1985). He also announced his candidacy for vice president of the union's northern New England region. Camelio claims that several of the defendants attempted to stifle his investigation and force him to abandon his candidacy by threatening to deprive him of his membership in the union if he did not desist. He asserts that such conduct violates the Hobbs Act, 18 U.S.C.A. 1951(a), a crime which qualifies as a predicate act under RICO. See 18 ___ U.S.C.A. 1961(1).  -7- Like Camelio's misappropriation claims, his Hobbs Act claims cannot satisfy RICO's causation requirement because the Hobbs Act violations he alleges did not cause the loss of either his job or his union membership. The Hobbs Act punishes any person who "obstructs, delays or affects commerce . . . by robbery or extortion or attempts or conspires to do so." 18 U.S.C.A. 1951(a). The Act defines "extortion" as "the obtaining of property from another, with his consent induced by ____ ___ _______ wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. 1951(b)(2) (emphasis added). If Camelio's complaint successfully pleads any Hobbs Act violations, those violations resulted from defendants' attempts to induce Camelio to abandon certain property rights attendant to his union membership (e.g., his right to inspect the union's financial records and his right to seek union office). As Camelio concedes that these attempts did not succeed, they could not have caused his injuries. Instead, the complaint alleges that Camelio's injuries were actually caused by defendants' unilateral acts which, although reprehensible, do not violate the Hobbs Act.5  ____________________ 5 Camelio alleges that defendants, acting in various combination: denied him the right to attend a union hearing; changed the means of collecting union dues so as to put his dues in arrears and thereby deprive him of his status as a union member; rebuffed his subsequent efforts to pay his dues; declared him ineligible to seek office within the union and removed his name from the ballot; and denied his repeated requests for a hearing on the issue of his membership. Such unilateral acts, though possibly unlawful on some other grounds, do not fall under the express terms of the Hobbs Act, which prohibits only "the obtaining of property from another, with his consent, induced by ____ ___ _______ -8- 3. Obstruction of Justice Claims _____________________________ Camelio's final argument is that defendants are liable under RICO because they engaged in a campaign of obstructive conduct in violation of two federal criminal statutes, 18 U.S.C.A. 1510 and 1512. Violations of these statutes constitute predicate acts of "racketeering activity" under RICO. See 18 U.S.C.A. 1961(1). Further, Camelio has sufficiently ___ alleged that defendants' obstructive conduct caused his injuries to satisfy RICO's proximate cause requirement. Camelio's final attempt to salvage his RICO claims fails, however, because the conduct of which he complains does not violate either obstruction statute. The two statutes on which Camelio relies are similar in focus and effect. Section 1510(a) makes it a crime for any person to "willfully endeavor[] by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute . . . to a criminal investigator." 18 U.S.C.A. 1510(a). Similarly, 1512(a)(2) punishes any person who "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person  ____________________ wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. 1951(b)(2) (emphasis added); see also Evans v. United ________ _____ ______ States, 504 U.S. 255, 265 (1992) (reasoning that where the ______ defendant is a private actor -- and not a public official extorting under color of official right -- "the victim's consent _______ must be induced by wrongful use of actual or threatened force, violence or fear.") (emphasis added) (internal quotations omitted); United States v. Bucci, 839 F.2d 825, 827 (1st Cir.), _____________ _____ cert. denied, 488 U.S. 844 (1988); United States v. Hathaway, 534 _____ ______ _____________ ________ F.2d 386, 393 (1st Cir.), cert. denied, 429 U.S. 819 (1976). _____ ______ -9- from . . . reporting to a law enforcement officer . . . the commission . . . of a Federal offense." 18 U.S.C.A.  1512(c)(2). Both statutes focus on a specific step in the criminal investigatory process, namely the "communication" or "reporting" of information to criminal investigators. See, e.g., ___ ____ United States v. Siegel, 717 F.2d 9, 20 (2d Cir. 1983) (in order _____________ ______ to convict under 1510(a), prosecution must prove that defendant had a reasonably founded belief that information had or was about to be given to a federal investigator); United States v. San _____________ ___ Martin, 515 F.2d 317, 320-21 (5th Cir. 1975) (prosecution must ______ prove that "[defendant] knew or reasonably believed that [informant] had information which she had given or would give" to federal investigators).  The conduct on which Camelio bases his claims falls outside the scope of both statutes because he alleges that defendants engaged in their obstructive conduct in an effort to prevent him from uncovering information of wrongdoing rather than to prevent him from reporting information he had already uncovered. Conduct that is aimed only at preventing a private citizen from uncovering evidence of a crime, while undeniably wrong, is not within the purview of either obstruction of justice statute. Accordingly, Camelio cannot save his RICO claims by relying on either statute. This is the fourth time in recent years that we have been called upon to evaluate the sufficiency of a RICO claim arising from an employment dispute. In all four cases, the claim -10- has failed to survive a motion to dismiss. See, e.g., Miranda, ___ ____ _______ 948 F.2d at 47; Pujol, 829 F.2d at 1205; Nodine, 819 F.2d at 349. _____ ______ Although we are not prepared today to address the issue in a categorical fashion, we emphasize the court's statement in Miranda: "While it may be theoretically possible to allege a _______ wrongful discharge which results directly from the commission of a RICO predicate act . . . any such safe harbor would be severely circumscribed." 948 F.2d at 41. Whatever the future may hold for this category of claims, Camelio's RICO claims are well outside any safe harbor that may exist. B. The State Law Claims B. The State Law Claims ____________________ After properly dismissing Camelio's RICO claims, the district court proceeded to dismiss three of his state law claims against all of the defendants (breach of contract, negligent infliction of emotional distress, and false light invasion of privacy) and parts of two other claims as to several individual defendants (state constitutional violations and intentional infliction of emotional distress). The court then declined to exercise supplemental jurisdiction over the remaining claims and remanded them to state court. Camelio challenges the court's dismissal of the state law claims. Rather than addressing the merits of these claims, we conclude that the court erred in retaining supplemental jurisdiction over the state law claims after it dismissed the federal claims on which jurisdiction was based. -11- A federal court exercising original jurisdiction over federal claims also has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. 1367(a) (West 1993). If, however, the court dismisses the foundational federal claims, it must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue. Roche v. John Hancock Mut. Life Ins. Co., 81 _____ _______________________________ F.3d 249, 256-57 (1st Cir. 1996). Among the factors that will often prove relevant to this calculation are the interests of fairness, judicial economy, convenience, and comity. Id. Comity ___ is a particularly important concern in these cases. As the Supreme Court observed in United Mine Workers v. Gibbs, 383 U.S. ____________________ _____ 715, 726 (1966),  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well. Accordingly, the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation. See Rodr guez v. Doral ___ _________ _____ Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  ______________ -12- A variety of factors counsel against retention of jurisdiction over the state law claims in this case. First, the court dismissed the only federal claims well before trial under circumstances in which the parties would not be unfairly prejudiced by a remand of the state law claims. Second, it does not appear that the district court's disposition of some but not all of the state law claims will materially shorten the time it will take to resolve the parties' dispute as the remanded claims concern the same nucleus of operative fact as the dismissed claims. Third, and perhaps most importantly in this case, the claims that the court dismissed raise substantial questions of state law that are best resolved in state court. For all of these reasons, we hold that the district court erred in retaining jurisdiction over the state law claims. III. CONCLUSION III. CONCLUSION __________ For the foregoing reasons, we conclude that the district court properly dismissed Camelio's RICO claims. Having dismissed the federal claims, however, the court should have refrained from exercising supplemental jurisdiction over Camelio's state law claims and remanded them to state court. The district court's dismissal of Camelio's RICO claims is affirmed. As to the supplemental state law claims, the affirmed ________ court's judgment is vacated with instructions to remand the vacated _______ remaining claims to state court. -13-