Coltin v. Town of Londonderry        CV-98-170-JD  05/05/99

UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


David H. Coltin

        v.                              Civil No. 98-170-JD

Town of Londonderry, et al.


                            O R D E R


     The pro se plaintiff, David Coltin, brought this action

against the town of Londonderry, Christopher Childs, William

Hart, Ethel Coltin, and Francis Rapisardi, asserting state law

claims for malicious prosecution and false arrest, and federal

claims pursuant to 42 U.S.C.A. § 1983 for alleged violations of

the plaintiff's rights under the Constitution.  Before the court

now are the motions for summary judgment of Ethel Coltin

(document no. 25), Francis Rapisardi (document no. 26), the town

of Londonderry, Christopher Childs, and William Hart (document

no. 27).



                           Background

     In 1988 David Coltin was divorced from Ethel Coltin and

awarded joint legal custody, residual physical custody, and

visitation rights of his two children.  Interpersonal conflict

persisted between the plaintiff and Ethel Coltin resulting in a

number of restraining orders dictating the terms of the

plaintiff's contact with Ethel Coltin.  On repeated occasions the plaintiff was found to have violated the restraining orders and has served two sentences at the Rockingham County House of Corrections for such violations.

On December 8, 1993, the Rockingham County Superior Court entered a permanent restraining order against the plaintiff providing that:

> Defendant is restrained from entering onto or crossing the property line of the premises where the plaintiff resides, as a permanent order. Further, he is restrained from interfering with her person or liberty, from calling her at her place of employment, from harassing, intimidating, or threatening her, her relatives, or other household members, and from taking, converting or damaging property in which she has a legal or equitable interest, including her mail.
>
> This order shall be enforceable in the same manner and to the same extent as domestic violence orders issued pursuant to RSA 173-B.  Violations of this order shall result in arrest and may result in imprisonment.

Defs.' Town of Londonderry, Childs, and Hart Mot. for Summary J., Ex. 13 (emphasis added) ("Defs.' Mot.").

On October 19, 1994, the plaintiff appeared in front of Ethel Coltin's residence.  He met defendant Rapisardi at the head of the driveway, but Rapisardi retreated into the residence.  The plaintiff called for his children to come out of the house, although as discussed below, it is disputed as to whether the plaintiff was shouting or not.  The plaintiff left the premises to attempt to phone his children but returned shortly after.

2

Upon his return the plaintiff remained in front of the premises for approximately ten minutes and sounded the horn of his automobile. The plaintiff did not enter onto Ethel Coltin's property.

Defendants Rapisardi and Ethel Coltin recorded the event with a video camera and called the town of Londonderry police. Defendant Childs, a town of Londonderry police officer, and officer Crooks, responded to the telephone call of Ethel Coltin. Officer Crooks discovered the plaintiff in his automobile in the vicinity of Ethel Coltin's residence. The plaintiff acknowledged his presence in front of the residence but asserted he was there in furtherance of his visitation rights. Officer Crooks advised the plaintiff not to return to the residence unless he was scheduled to visit the children.

Meanwhile, defendant Childs arrived at Ethel Coltin's residence. He was shown the restraining order precluding the plaintiff from harassing defendant Ethel Coltin and other members of the household. He was told that the plaintiff had been shouting at defendant Rapisardi and Ethel Coltin and repeatedly sounding his horn. He was also shown a video tape in which he witnessed an individual identified as the plaintiff shouting at people within the residence. The plaintiff was not arrested at this time.

On October 20, 1994, the plaintiff again returned to the residence. Again, as discussed later, the plaintiff's actions at the time of the incident are in dispute. However, Ethel Coltin told the responding officer that the plaintiff arrived at the residence and repeatedly sounded his horn for approximately ten minutes in violation of a restraining order. The plaintiff left the residence before the police arrived but was stopped by town of Londonderry police within the vicinity of the residence. He acknowledged his earlier presence at the residence but again asserted he was there in furtherance of his visitation rights.

On November 28, 1994, defendant Childs filed two criminal complaints against the defendant. The complaints were premised upon the events of October 10 and 20, 1994, and asserted that the plaintiff committed the crime of stalking his wife. Defendant Hart prosecuted the plaintiff. However, the case was dismissed on February 8, 1995, on the basis that there were no allegations that the plaintiff crossed Ethel Coltin's property line.

The plaintiff filed this action on February 26, 1998, asserting claims against the defendants as follows: (1) defendants Rapisardi, Ethel Coltin, Childs, and Hart engaged in the malicious prosecution of the plaintiff; (2) defendants Rapisardi, Ethel Coltin, Childs, and the town of Londonderry falsely arrested the plaintiff; (3) defendants Childs and Hart

4

violated the plaintiff's constitutional rights by engaging in this conduct. On October 30, 1998, the court granted defendant Rapisardi and Ethel Coltin's motion for summary judgment on the false arrest claim on statute of limitations grounds. Before the court now are the summary judgment motions of defendants Town of Londonderry, Childs, Hart, Rapisardi, and Coltin on all remaining claims. The motions are resolved as follows.

## Discussion

### Standard of Review

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties seeking summary judgment bear the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett,

5

477 U.S. 317, 323 (1986); <u>Quintero de Quintero v. Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.   <u>Defendants Childs, Hart, and Town of Londonderry</u>

A.   <u>Section 1983</u>

The plaintiff asserts a claim under 42 U.S.C.A. § 1983 premised upon "the illegal false arrest and detention and malicious prosecution of the plaintiff . . . ." Pl.'s Compl. at 9. The plaintiff asserts violations of his rights under the Fourth, Fifth, and Sixth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment. The court addresses the alleged constitutional violations separately.

### 1. The Fourteenth Amendment, Due Process, and Equal Protection

The plaintiff asserts that the allegedly unlawful arrest and malicious prosecution violated his right not to be deprived of life, liberty or property without due process of law under the Fourteenth Amendment. However, in Albright v. Oliver the Supreme Court held that there was no substantive due process claim under the Fourteenth Amendment for malicious prosecution. See 510 U.S. 266, 271, 275 (1994). Moreover, because an adequate state law remedy for malicious prosecution exists, there is no section 1983 procedural due process claim for such a prosecution. See Reid v. State of New Hampshire, 56 F.3d 332, 336 n.8 (1st Cir. 1995) ("Given an adequate state-law remedy for a procedural due process violation, no § 1983 claims lies."); see also Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) ("[A] § 1983 malicious prosecution claim is not properly based on either a procedural or substantive due process violation."). For the same reasons, under Reid, the plaintiff's section 1983 claim for procedural due process violations premised upon the alleged unlawful arrest also fails. See 56 F.3d at 336 n.8

Finally, although it is unclear whether the plaintiff seeks to assert a substantive due process claim on the basis of the alleged false arrest, such a claim must fail as well. "Where a particular Amendment 'provides an explicit textual source of

7

constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" <u>Albright</u>, 510 U.S. at 273 (holding Fourth Amendment, not substantive due process, provided basis for plaintiff's claim of unconstitutional deprivation of liberty interest by alleged malicious prosecution without probable cause) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)). The Fourth Amendment is the explicit textual source of the plaintiff's protection from unreasonable seizure of his person. <u>See</u> U.S. Const. Amend. IV. Therefore, the plaintiff's section 1983 claim premised upon an unlawful seizure of his person, i.e., the false arrest claim, does not constitute a substantive due process claim under the Fourteenth Amendment. <u>See</u> <u>Albright</u>, 510 U.S. at 271, 273; <u>see also</u>, <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 115 (2d Cir. 1995) (concluding <u>Albright</u> stood for proposition that "the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest.").

The plaintiff also contends that his allegedly unlawful arrest and prosecution violated his "right to equal protection of the laws secured by the Fourteenth Amendment." <u>See</u> Compl. at 9. The Equal Protection Clause of the Fourteenth Amendment provides: "No state shall make or enforce any law which shall . . . deny to

8

any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "A preliminary step in equal protection analysis is to determine whether persons who are similarly situated are subject to disparate treatment." Rodriquez v. Lamer, 60 F.3d 745, 749 (11th Cir. 1995).

The plaintiff fails to state a claim of a violation of the Equal Protection Clause because he fails to allege that similarly situated people were treated differently than he. In this context, the plaintiff must show that others subject to similar restraining orders were treated differently than he. This he fails to do. Indeed, although the plaintiff contests the fairness of the investigation of the town of Londonderry police, in this case their conduct could not form the basis of an equal protection claim as the plaintiff alone was the subject of an investigation for a suspected violation of the restraining order.

### 2. The Fourth Amendment

As indicated by First Circuit jurisprudence, a section 1983 claim may lie on the basis of an arrest and prosecution in derogation of the Fourth Amendment. See, e.g., Meehan, 167 F.3d at 88; Loge v. Dore, 103 F.3d 1040 (1st Cir. 1997); Abraham v. Nagle, 116 F.3d 11 (1st Cir. 1997). False arrest and malicious prosecution claims are often closely associated and the First

9

Circuit has remarked that "the lines between malicious prosecution and false arrest have become blurred, to the extent that a malicious prosecution claim may be predicated on an arrest made pursuant to a warrant that was issued without probable cause." Meehan, 167 F.3d at 89. Where probable cause for the disputed arrest and prosecution exists, however, the Fourth Amendment claim fails. See Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996) ("if probable cause to arrest and prosecute the appellant existed, no unconstitutional deprivation existed."); see also, Meehan, 167 F.3d at 89 ("a § 1983 malicious prosecution action based upon a deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate proceedings . . . ."); see Nagle, 116 F.3d at 13 (probable cause "largely defeats the false arrest claim under both federal and state law.").

"An arrest warrant complies with the Fourth Amendment if, under the totality of circumstances, there is probable cause to believe the suspect committed the offense." Hoffman v. Reali, 973 F.2d 980, 985 (1st Cir. 1992). "Probable cause to make an arrest exists where the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person to conclude that an offense has been committed by the person arrested." Id. "[T]he quantity and

quality of proof necessary to ground a showing of probable cause is not the same as the quantity and quality of proof necessary to convict." Roche, 81 F.3d at 255.

On the dates at issue, October 10 and 20, 1994, the plaintiff was subject to the Rockingham County Superior Court restraining order of December 8, 1993. As discussed above, the order provided that:

> Defendant is restrained from entering onto or crossing the property line of the premises where the plaintiff resides, as a permanent order. Further, he is restrained from interfering with her person or liberty, from calling her at her place of employment, from harassing, intimidating, or threatening her, her relatives, or other household members, and from taking, converting or damaging property in which she has a legal or equitable interest, including her mail.
>
> This order shall be enforceable in the same manner and to the same extent as domestic violence orders issued pursuant to RSA 173-B. Violations of this order shall result in arrest and may result in imprisonment.

Defs.' Mot., Ex. 13 (emphasis added).

The police report of the October 10, 1994, incident begins by stating that Ethel Coltin and Rapisardi had called the police to report that the plaintiff was "in violation of a restraining order not to harass or intimidate[] them." Defs.' Mot., Ex. 14. At the time of the incident Ethel Coltin showed defendant Childs a copy of the restraining order. See id.[1] Ethel Coltin and

---

[1]Ethel Coltin also showed defendant Childs a document indicating the plaintiff's visitations rights, although she

11

Rapisardi both told the officer that the plaintiff "drove up to the residence and started yelling toward [Rapisardi] and then to the members of the house. [The plaintiff] drove away and came back and parked again in front of the residence [and] began honking the car horn." Id. Ethel Coltin and Rapisardi provided written statements to this effect. The police found the plaintiff in the vicinity of the residence at the time of the incident and the plaintiff acknowledged being in front of the residence earlier.

Similarly, on October 20, 1994, the police were dispatched to Ethel Coltin's residence based upon an alleged violation of the restraining order. See Defs.' Mot., Ex. 17. Ethel Coltin represented to the police that the plaintiff again appeared before the residence on a day which was not a visitation day and began sounding his horn for approximately ten minutes. See id. Again, the plaintiff was found in the area of the residence at the time of the incident. See id.[2]

---

represented to defendant Childs that the agreed upon visitation date was October 12, 1994, not October 10, 1994. See id.

[2]The court also notes the existence of a video tape, although it is not in the record, depicting a man identified to Childs by Rapisardi as David Coltin, outside of Ethel Coltin's residence, whom Childs perceived to be engaging in the above described actions on October 10, 1994. This tape was viewed by Childs both at the residence at the time of the incident and again at the police station. See Defs.' Mot. Ex. 14.

12

On this record, there is no genuine issue of material fact as to whether a reasonably prudent person could have concluded that the plaintiff had violated the terms of the restraining order by harassing Ethel Coltin and members of the household on October 10 and 20, 1994. Therefore there is no triable issue as to whether probable cause existed for the arrest and prosecution of the plaintiff. See Roche, 81 F.3d 249, 254, 256 n.5; see also, Meehan, 167 F.3d at 89. Contrary to the plaintiff's assertions, there was no need to establish that the plaintiff crossed the property line to establish probable cause under the language of the restraining order. Nor, contrary to the plaintiff's allegations in his complaint, did defendant Childs premise his criminal complaint upon the plaintiff's appearance at Ethel Coltin's residence. See Compl. at 4. The affidavit in support of the arrest warrant and the criminal complaint were both clearly premised upon harassing and intimidating behavior. See Defs.' Mot., Ex. 20.[3]

Finally, in concluding its discussion of Fourth Amendment issues, the court notes that although the plaintiff alleged in the background facts of his complaint that the prosecutor refused

---

[3]Central to this case are alleged violations of the prohibition of harassment and intimidation in the restraining order, rendering the plaintiff's reliance on alleged visitation rights on the dates in question irrelevant.

13

to provide a videotape of the plaintiff's conduct on October 10, 1994, this is not identified as a basis for any of the federal claims in the complaint. See Compl. at ¶¶ 26, 41-48. Moreover, although the plaintiff raised the issue of the videotape in his memorandum of law, he provided no evidence that he was precluded from viewing the tape or that he was denied access to the tape as part of the criminal proceedings against him.

In contrast, the record contains testimonials of defendant Hart that he provided the plaintiff with access to the videotape at the Londonderry Police Department and that the tape was subsequently viewed by the plaintiff and or his counsel. The only evidence in the record, therefore, indicates that the plaintiff did have access to the videotape. The mere allegations of the plaintiff otherwise is insufficient to establish a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### 3. Fifth and Sixth Amendments

The plaintiff also asserts violations of his Fifth and Sixth Amendment rights, although he does not specify what actions violated those rights, nor how they violated those rights. To the extent that the plaintiff premises his claims upon alleged violations of the due process clause of the Fifth Amendment, his

14

claim must fail as it is against state actors, not federal, and therefore must be analyzed under the Fourteenth Amendment, supra. See Smith v. Kitchen, 156 F.3d 1025, 1028 (10th Cir. 1998) ("From the earliest interpretations of this amendment, courts have agreed that the Fifth Amendment protects against actions by the federal government."); Winfield v. Bass, 106 F.3d 525, 530 n.2 (4th Cir. 1997) ("Further, because Appellants are not federal actors, our analysis would be governed by the Fourteenth Amendment rather than the Due Process Clause of the Fifth Amendment."); United States v. Greene, 995 F.2d 793, 795 (8th Cir. 1993) ("An action that violates the fourteenth amendment guarantee of equal protection when committed by a state actor violates the due process guarantee of the fifth amendment when committed by a federal actor.").

Nor can the court discern any other basis for a claim under the Fifth Amendment in the plaintiff's complaint. There is no allegation of a property taking, double jeopardy, self incrimination, or improper grand jury proceedings. See U.S. Const. Amend. V. Similarly, the court perceives no grounds for a Sixth Amendment claim in the plaintiff's case.

Given the determination that no genuine issue of material fact exists as to whether the conduct of Childs or Hart resulted in a violation of the plaintiff's constitutional rights, the Town

15

of Londonderry is entitled to entry of judgment in its favor on the plaintiff's federal claims. See City of Los Angeles v. Heller, 475 U.S. 796 (1986).[4]

---

[4]The court notes that defendant Town of Londonderry is also entitled to summary judgment in its favor on the plaintiff's section 1983 claims because the plaintiff did not establish a custom or policy of the town that violates his federal rights. See Smith v. Edwards, ---F.3d---, 1999 WL 163432 at *7 (2nd Cir. March 24, 1999) ("Under 42 U.S.C.A. § 1983, a municipality may be held liable for a constitutional violation if the plaintiff can prove that the violations resulted from a municipality's customs or policies.").

In this case there are no facts alleged in the plaintiff's complaint that could support a claim that the town had a policy or custom that resulted in the derogation of the plaintiff's rights under federal law. Indeed, the complaint clearly evidences an intent to base the section 1983 claim against the town upon a theory of respondeat superior. See Compl. ¶42 ("The defendants Christopher Childs and William R. Hart were at all relevant times respectively employed by the defendant town of Londonderry as police officer and prosecutor."). The Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior." Brown, 520 U.S. at 403.

Finally, although the plaintiff asserts that the town had an official policy to arrest the plaintiff if he attempted to pick up his son, "even on a scheduled visitation day," see Pl.s' Mem. of Law at 9, and that it's zero tolerance towards domestic violence issues violated due process, see id. at 11-12, the evidence does not support such assertions. Instead, the record and the plaintiff's own admissions in his arguments clearly indicate the plaintiff's repeated disregard for court orders and the plaintiff's subsequent arrest in accordance with the town's policy of enforcing those court orders. The court concludes that the plaintiff has failed to establish a genuine issue of material fact regarding a policy or custom in derogation of the plaintiff's federal rights.

16

## 4. Immunity

In the alternative, defendants Childs and Hart are also entitled to summary judgment on the plaintiff's section 1983 claims on immunity grounds. In Harlow v. Fitzgerald the Supreme Court established that under the doctrine of qualified immunity:

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. 800, 812 (1982). "Defendant police officers are shielded if . . . at summary judgment, there is no genuine dispute of material fact that would prevent a finding that the defendants' actions, with regard to applying or following such clearly established law, were objectively reasonable." Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (1st Cir. 1997). The First Circuit has "held that it is objectively reasonable for a police officer to seek an arrest warrant so long as the presence of probable cause is at least arguable." Hoffman v. Reali, 973 F.2d 980, 986 (1st Cir. 1992). Similarly, a prosecutor may be entitled to absolute immunity if the cause of action arises from conduct that is related to the prosecution of a case, see Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29-30 (1st Cir. 1995), although "the availability of absolute immunity turns on a functional analysis of the prosecutorial activity under

17

consideration," <u>Harrington v. Almy</u>, 977 F.2d 37, 41 (1st Cir. 1992). In <u>Harrington</u>, the court held that the decision to prosecute or not falls within "the precise zone of decision-making the Supreme Court has placed at the center of the immunity doctrine." <u>Id.</u> at 42 n.3

In the case at hand the plaintiff's claims arise from an allegedly unlawful arrest, detention, and prosecution of the plaintiff. <u>See</u> Compl. at ¶ 45. The court's preceding discussion has already established the lack of a genuine issue of material fact as to probable cause for the plaintiff's arrest and prosecution. The actions of defendant Childs were therefore objectively reasonable. Moreover, the decision of defendant Hart to prosecute the claim against the plaintiff falls squarely within his prosecutorial responsibilities for which he is absolutely immune.

B.   <u>State Law Claims</u>

1. <u>Jurisdiction</u>

The court's subject matter jurisdiction over the case at hand was initially premised upon its original jurisdiction over the plaintiff's section 1983 claims and its supplemental jurisdiction over the state law claims. <u>See</u> 28 U.S.C.A. § 1367(a) (West 1999) (providing for "supplemental jurisdiction

18

over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). However, in light of this court's granting of summary judgment on the plaintiff's only federal law claims in this case, the court must "reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1993). Factors for consideration include "the interests of fairness, judicial economy, convenience, and [of particular importance] comity." Id. "The balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Id.

In this case the action has progressed to the point where discovery is closed and trial is scheduled for the near future. Cf. Camelio, 137 F.3d at 672. Failure to address the claims will substantially lengthen the time required to resolve the dispute. Cf. id. The case does not present complicated issues of state law. Cf. id. The legal analysis and factual inquiry required by the state and federal claims are very similar. The court concludes that addressing the remaining state claims advances the

19

interests of fairness, judicial economy, and convenience.  Nor in this case, given the clear state law standards to apply, do comity concerns necessitate remand to the state court.  <u>Cf.</u> <u>Camelio</u>, 137 F.3d at 672 ("perhaps most importantly in this case, the claims that the court dismissed raise substantial questions of state law that are best resolved in state court.").

### 2.  <u>Malicious Prosecution</u>

A claim for malicious prosecution under New Hampshire law has four elements:  (1) the defendant must be instrumental in initiating the criminal charges; (2) the plaintiff was acquitted or otherwise successful on the merits; (3) the defendant acted with malice, "that is, with a purpose other than bringing a suspected offender to justice;" and (4) that the defendant lacked probable cause to believe that the plaintiff had committed acts that constituted a crime.  <u>McGranahan v. Dahar</u>, 119 N.H. 758, 769 (1979).  In New Hampshire, "[p]robable cause in the malicious prosecution context has long been defined as 'such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'"  <u>Stock</u> <u>v. Byers</u>, 120 N.H. 844. 846 (1980) (citations and quotations omitted).  Given the facts of this case as discussed above, the

court concludes that there is no genuine issue of material fact regarding the existence of probable cause and the plaintiff's state law claim for malicious prosecution must fail as well.

3. <u>False Arrest</u>

Defendants Hart and Childs move for summary judgment on the plaintiff's state law claim of false arrest asserting that the claim is barred by New Hampshire's three year statute of limitations for personal injury actions. <u>See</u> RSA § 508:4 (1997). The plaintiff concedes the applicability of the three year statute of limitations. <u>See</u> Pl.'s Obj. at 2. However, the plaintiff contests the defendants' motion on the grounds that the defendant's conduct is a continuing course of conduct.

False arrest is the "unlawful restraint of an individual's personal freedom." <u>Hickox v. J. B. Morin Agency, Inc.</u>, 110 N.H. 438, 442 (1970). In his complaint the plaintiff alleges that he was unlawfully arrested on October 31, 1994. Under New Hampshire law a cause of action accrues and the statute of limitations begins to run "'when the plaintiff discovers . . . both the fact of his injury and the cause thereof.'" <u>Conrad v. Hazen</u>, 140 N.H. 249 (1995) (citations and quotations omitted). The plaintiff's cause of action therefore accrued and the tolling period began to run on October 31, 1994, the date of the plaintiff's arrest. The

21

complaint was filed February 26, 1998.

The court finds untenable the plaintiff's assertions that the defendants were in continuous violation of the plaintiff's rights. There is no allegation in this case that the plaintiff was continuously under unlawful arrest. The only allegation of arrest was on October 31, 1994. For this reason the plaintiff's reliance on Murphy v. Timberlane Regional School District is misplaced. See 22 F.3d 1186, 1194, 1195 (1st Cir. 1994). At issue in Timberlane was the date of accrual of the school district's alleged "continuous violation of its [duty] to pursue an administrative resolution to [an] IEP stalemate." Id. at 1195. Here there was no continuing breach of an ongoing duty.[5]

---

[5]The court notes that the lack of a genuine issue of material fact regarding probable cause requires granting summary judgment on the plaintiff's state law false arrest claim on that basis as well. See, e.g., Hickox v. J.B. Morin Agency, Inc., 110 N.H. 438, 452 (1970); Larreault v. First Nat'l Stores, 93 N.H. 375, 375 (1945) ("the defendant, in order to avoid liability, has the burden of justifying his act by showing that he had probable cause for imposing the particular restraint.").

4. <u>Immunity</u>

Defendant Hart is also entitled to summary judgment on the plaintiff's state law claims on the basis immunity. Under New Hampshire law, "prosecutorial immunity exists within the rubric of judicial immunity and is absolute when functionally related to the initiation of criminal process or to the prosecution of criminal charges." <u>Belcher v. Paine</u>, 136 N.H. 137, 143 (1992). "[T]he decision to indict, even when based on an incomplete investigation, is clearly within the scope of absolute immunity." <u>Id.</u> Indeed, "[a]ll judicial officers when acting on subjects within their jurisdiction, are exempted from civil prosecution for their acts . . . [and] this doctrine has been extended to apply to the acts and conduct of all public officers in their exercise of judicial authority." <u>Id.</u> (citations and quotations omitted). The plaintiff's claims are premised upon his alleged wrongful arrest and prosecution, and the conduct which the plaintiff asserts gives rise to the malicious prosecution claim is functionally related to initiating criminal process and prosecution.

II. <u>Defendants Ethel Coltin and Rapisardi</u>

Defendants Ethel Coltin and Rapisardi move for summary judgment on the plaintiff's state law malicious prosecution

23

claim, arguing that the plaintiff cannot establish a genuine issue of material fact regarding probable cause or the defendants' malice.[6] As discussed above, to be successful in an action for malicious prosecution under New Hampshire law a plaintiff must establish, among other things, that the defendant acted with malice, "that is, with a purpose other than bringing a suspected offender to justice," and that the defendant lacked probable cause to believe that the plaintiff had committed acts that constituted a crime. McGranahan v. Dahar, 119 N.H. at 769.[7]

In support of her motion for summary judgment Ethel Coltin attests that on October 10 and 20, 1994, the plaintiff arrived at her residence and began shouting at her and Rapisardi and sounding the horn for up to ten minutes. Ethel Coltin Aff. at 4. Defendant Rapisardi similarly attested as to the events of

---

[6]Defendant Rapisardi also moves for summary judgment arguing that he was not instrumental in the initiation of the prosecution, although the court need not reach this ground given the court's determination regarding probable cause.

[7]The plaintiff asserts that the "pertinent issue in this action [is] the visitation rights that were in place in October 1994 and how these visitation rights came into place." Pl.'s Obj. to Def. Rapisardi and Ethel Coltin's Mot. for Summ. J., Me. at Law at 2. Contrary to the plaintiff's assertion, central to this action is the Rockingham County Superior Court's restraining order of December 8, 1993. For the purposes of the immediate summary judgment motions in this case, the court must determine whether a genuine issue of material facts exists regarding probable cause for believing that the plaintiff was in violation of the December 8, 1993, restraining order on October 10 and 20, 1994.

24

October 10, 1994.

In his objection to the defendants' motion for summary judgment the plaintiff seems to contest this characterization of his behavior. However the plaintiff has offered no evidence to the contrary to create a genuine issue of material fact. Mere allegations and assertions are inadequate. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256. Moreover a careful reading of his arguments reveals that he does not dispute statements that he was repeatedly sounding his horn. The court therefore concludes that there is no genuine issue of material fact as to whether probable cause existed to believe the plaintiff was in violation of the restraining orders on the date at issue.

<u>Conclusion</u>

In light of the above discussion, the court grants the summary judgment motions of the defendants town of Londonderry, Hart, and Childs (document no. 27), defendant Ethel Coltin

(document no. 25), and defendant Rapisardi (document no. 26).

The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

May 5, 1999

cc:  David H. Coltin, pro se
     Dyana J. Crahan, Esquire
     Jay Eric Printzlau, Esquire