Barbara CIRCIELLO

v.

Louis ALFANO, Jr., M.D.
and Hallmark Health
Systems, Inc.

Civil Action No. 08–CV–11736–RGS.

United States District Court,
D. Massachusetts.

May 4, 2009.

---

John D. Cassidy, John M. Dellea, Ficksman & Conley LLP, Benjamin L. Mack, Ian D. Roffman, Nutter, McClennen & Fish, LLP, Boston, MA, for Defendants.

Domenic Paolini, Paolini & Haley, Boston, MA, for Plaintiff.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

STEARNS, District Judge.

This action arises out of the 1995 death of plaintiff Barbara Circiello's father, Raymond DiGiovanni, allegedly at the hands of Dr. Louis Alfano, Jr., the surgeon who performed DiGiovanni's laparoscopic gall bladder removal.[1] Circiello claims that defendants Hallmark Health Systems, Inc. (Hallmark),[2] Alfano, and others conspired from 1995 until 2008 to defraud her of $10 million in wrongful death damages. She alleges: (i) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); (ii) common-law fraud; (iii) misrepresentation; and (iv) fraudulent concealment. Alfano and Hallmark each move to dismiss Circiello's Complaint based on, *inter alia,* her failure to state a viable cause of action under the RICO statute, her failure to plead the elements of fraud with particularity, and the expiration of the statutes of limitations with respect to all of her claims. A hearing on the motion to dismiss was held on March 12, 2009.

## BACKGROUND

Defendant Hallmark's characterization of the case is instructive.

The crux of plaintiff's Complaint is that Melrose–Wakefield Hospital, one of the

---

1. Laparoscopic surgery involves the use of a tiny telescope that permits a surgeon to operate with smaller instruments and incisions, thereby reducing overall trauma to the body.

2. Hallmark is a non-profit health care system made up of hospitals and medical practices in communities in and around Melrose, Massachusetts.

hospitals in Hallmark's system, [along with a number of other conspirators,] participated in an alleged racketeering conspiracy designed to enable a purportedly rogue doctor to commit medical malpractice. Plaintiff alleges that the doctor's malpractice caused her father's death in 1995 and that the alleged racketeers deprived her of the opportunity to pursue a wrongful death claim against the doctor before that claim expired.

The facts, in the light most favorable to Circiello as the non-moving party, are as follows. Alfano began a surgical practice at Melrose–Wakefield Hospital (Hospital) in 1990. He rose rapidly through the Hospital hierarchy, becoming President of the Hospital sometime in the period between 1994 and 1996. Sometime between 1996 and 1998, he became President of Hallmark's medical staff. Alfano's father, Dr. Louis Alfano, Sr., served as a Trustee of the Hospital and was a prominent member of the American Board of Abdominal Surgery (ABAS) (a credentialing organization for abdominal surgeons). Alfano was elected President of ABAS in 1995. In 1996, Alfano became President of Melrose Surgical Associates, a group practice that included Dr. Alfonso Serrano, who assisted Alfano in many of his surgeries.

On March 1, 1995, Alfano, assisted by Serrano, surgically removed DiGiovanni's gall bladder. During the ensuing twenty-four hours, DiGiovanni bled to death, allegedly from complications caused by Alfano's incompetence. When Alfano first spoke to the family after the surgery, he demanded to know why he had not been told that DiGiovanni was "a drinker." Alfano stated

that the surgery had been a success, but that DiGiovanni had a severely diseased and cirrhotic liver, most likely caused by excessive alcohol consumption. When the family told Alfano that DiGiovanni "never drank," Alfano replied that DiGiovanni was "so sick that he did not know how DiGiovanni was still walking around." Alfano told Circiello that DiGiovanni would have died with or without the surgery in a day or two from end-stage liver or kidney disease. Alfano repeatedly assured the family that DiGiovanni had died of "natural causes." Serrano completed DiGiovanni's death certificate, listing the cause of death as "liver failure" for "48 hr.," "liver cirrhosis," and "kidney failure."[3] The death certificate was filed at Melrose City Hall.

Circiello relied on Alfano's representations and the information on the death certificate, and as a result was "dissuaded and prevented from initiating a claim for medical malpractice against Alfano and others" after her father's death. Circiello alleges a continuing "cover-up" of Alfano's pervasive acts of malpractice from 1995 until 2007 (when Alfano's medical license was restricted by the Massachusetts Board of Registration in Medicine (BRM)). According to the Complaint, the coverup was orchestrated by Alfano through a conspiracy involving the Hospital, Alfano, ABAS, Serrano, the Medical Liability Mutual Insurance Company (MLMIA) (Alfano's malpractice insurer), and Dr. David Brooks.[4]

## RICO ALLEGATIONS

A successful civil RICO action requires proof of four elements: "(1) conduct (2) of

---

**3.** Serrano filed the original death certificate using his medical license number 39133. At a later date, Alfano prepared and signed a second death certificate for DiGiovanni but using Serrano's medical license number. The second death certificate also stated that DiGiovanni suffered "liver cirrhosis, severe." Alfano's medical license number is 50341.

**4.** Brooks is a medical witness who testified as a defense expert on Alfano's behalf in proceedings before the BRM and in various medical malpractice cases brought against Alfano. Circiello alleges that Brooks played a prominent role in the concealment of "serial malpractice and homicide committed by Dr. Alfano."

an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A "pattern of racketeering activity" consists of at least two related acts of racketeering activity committed by defendants over an extended period of time. *See Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.,* 94 F.3d 721, 731–732 (1st Cir.1996). To demonstrate relatedness, the predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics, and are not isolated events." *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 44 (1st Cir.1991) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). There must also be evidence of "continuity" sufficient to show that the predicate acts constituted a "pattern" (a "closed period of repeated conduct" amounting to a threat of continued criminal activity, or that they "are a regular way of conducting the enterprise"). *Id.* Predicate acts must be plead with particularity, *Ahmed v. Rosenblatt,* 118 F.3d 886, 889 (1st Cir.1997), and must be shown to have caused an injury to "business or property." *Libertad v. Welch,* 53 F.3d 428, 436 (1st Cir.1995). In this latter respect, the predicate act must be more than a "cause in fact" of a plaintiff's injury; it must be a proximate cause. *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 266 n. 11, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). *See also Camelio v. Am. Fed'n,* 137 F.3d 666, 670 (1st Cir.1998).

 The injury Circiello claims to have suffered is the lost opportunity to have realized a $10 million award against Alfano for the wrongful death of her father. Circiello offers no explanation of the basis for the $10 million figure. Moreover, she concedes that she could not have personally brought a wrongful death action as she was not the executor of her father's estate; the executor was her mother, who was still living at the time of DiGiovanni's death. Her theory (as it emerged at the hearing) is that as the beneficiary of her now deceased mother's estate, she would have inherited a substantial remnant of the wrongful damages award her mother would have received had she timely filed suit. This theory is based on a series of "what ifs": What if her mother had filed a timely suit? What if her mother had in fact recovered a $10 million award? What if her mother had died soon thereafter without dissipating her assets? What if her mother had in fact not disinherited her daughter or left the remnant of the estate to a favorite charity? And so on. If any proposition under RICO is well-established, it is that a RICO damages claim may not be based on mere speculation. *See DeMauro v. DeMauro,* 115 F.3d 94, 97 (1st Cir.1997) (a claimed civil RICO injury based on a "hypothetical inability to recover" in a *pending* lawsuit was too speculative to confer standing); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir.1994) ("[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite.").

The evanescent nature of Circiello's claimed injury is enough to terminate this action, but there is an additional point to be made. Even if a more solid foundation supporting the claim of injury could be cobbled together, Circiello does not limn an injury that Congress intended to redress under RICO. While at oral argument, Circiello insisted that the prospect of a wrongful death damages award, even if contingent, is a "property interest" cognizable under Massachusetts law. Assuming that this is true, "[w]here to set the 'business or property' threshold [for RICO purposes] depends on federal statutory purpose, and that purpose is likely to support a [federal] definition that is uniform throughout the country." *DeMauro,* 115

F.3d at 96–97. The few courts to have addressed the issue have uniformly concluded that damages from an unliquidated personal injury lawsuit are not "property" within the meaning of the RICO statute. *See, e.g., Bradley v. Phillips Petroleum Co.,* 527 F.Supp.2d 625, 647 (S.D.Tex.2007) (" '[E]ven if the Court undertook some philosophical approach' and construed the lost opportunity to bring a personal injury lawsuit as a property right, 'the Court nevertheless would be unable to adopt such an interpretation because it would contravene Congress' intent in enacting the RICO statute.' "); *Moore v. Eli Lilly and Co.,* 626 F.Supp. 365, 366–367 (D.Mass.1986) ("If Congress had intended that the rights and remedies established by RICO be available in every personal injury action involving financial loss, it could easily have enacted a statute referring to 'injury' generally or have referred expressly to injury to 'persons' in addition to injury to 'business or property.' "); *Zareas v. Bared–San Martin,* 209 Fed.Appx. 1, 1 (1st Cir.2006) ("[C]laims for personal injuries, such as emotional distress, are not 'business or property' and are not cog-nizable under RICO."). Moreover, this court has explicitly held that "[d]amages for *wrongful death* or personal injury are not available under § 1964(c)." *Curley v. N. Am. Man Boy Love Ass'n,* 2001 WL 1822730, at *4 (D.Mass.2001) (O'Toole, J.) (citing *Grogan v. Platt,* 835 F.2d 844 (11th Cir.1988)) (emphasis added).[5] *See also Connor v. Halifax Hosp. Med. Ctr.,* 135 F.Supp.2d 1198, 1219 (M.D.Fla.2001) (claims for money damages and related pecuniary losses relating to patients' deaths were not cognizable under RICO's private civil action provision).

Finally, Circiello fails to allege any facts supporting an inference of proximate cause connecting her injury to the "predicate acts" attributed to defendants, namely mailings by ABAS and Hallmark touting Alfano's skills as late as 2005, or similar statements attributed to a Hallmark employee in 2008. Circiello fails to allege how these acts contributed to her father's death, his choice of Alfano as surgeon or the Hospital as a location for the surgery, her reliance on Alfano's statements, or ultimately her loss of a prospective inheritance.[6] Without a sufficiently pled RICO

---

**5.** It is not necessary to discuss the other challenged elements of Circiello's RICO claim, other than to note that it is doubtful that she has successfully pled an enterprise. An enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Circiello alleges that "at all relevant times," the defendants defrauded her through an association-in-fact enterprise consisting of the Hospital, ABAS, Louis Alfano, Brooks, Serrano, Melrose Surgical Associates, and MLMIA. The facts as pled fail to allege how all of these actors were associated "for a common purpose of engaging in a course of conduct." At best, Circiello's allegations support a "hub-and-spoke" association, in which all of the supposed members of the enterprise have relationships with Alfano, but not with each other. Such allegations do not satisfy RICO's enterprise requirement. *See In re Lu-*

*pron Marketing and Sales Practices Litigation,* 295 F.Supp.2d 148, 174 n. 29. (D.Mass.2003).

**6.** In her Opposition, Circiello asserts as a "predicate act" (although it is not pled in the Complaint), Alfano's "tamper[ing] with" DiGiovanni's death certificate and medical records "with the intent to impair [their] integrity for use in an official proceeding." The suggestion is that this allegation is somehow related to the federal evidence tampering statute. The federal statute applies to impairing the integrity or availability of evidence for use in an "official proceeding," which it defines as "a proceeding before a judge or court of the United States." 18 U.S.C. §§ 1512(a)(1)(A) and 1515. Circiello has not pled any "official proceeding" with which Alfano intended to interfere. An alleged attempt on the part of Alfano to alter the death certificate to avoid liability for malpractice in a *state* proceeding obviously does not fulfill this requirement. Moreover, although "an

claim there can be no RICO conspiracy. For these reasons, the RICO claims will be dismissed. *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir.2000).

Having dismissed the foundational federal claims, the court declines to exercise jurisdiction over Circiello's pendent state law claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").[7]

### CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss the RICO claims will be *ALLOWED*. The Clerk will enter judgment for defendants on these claims with a notation of the court's declination of jurisdiction over plaintiff's state-law claims. The Clerk will then close the case.

SO ORDERED.

official proceeding need not be pending or about to be instituted at the time of the offense," section 1512(f)(1), Alfano's presence in this federal lawsuit, which he could not have foreseen when the tampering was alleged to have occurred, does not save the allegation. Plaintiff's counsel's assertion at oral argument that the tampering was intended to interfere with an investigation by Medicare of DiGiovanni's death is, to say the least, farfetched, and, in any event, not pled in the Complaint (or even raised in the Opposition).

7. To the extent it might provide some guidance to the parties, the court notes that in its judgment the statutes of limitations and/or repose have long since run on these claims. *See, e.g.*, Mass. Gen. Laws ch. 260 § 4: "Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanatoria shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body."