Pan American v. Pease, et al.        CV-03-093-M    10/29/03
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Pan American Airways Corp.
and Arlington Leasing, Inc.,
     Plaintiffs

     v.                                    Civil No. 03-93-M
                                           Opinion No. 2003 DNH 186
Pease Development Authority,
William Bartlett, Jr.,
Peter Loughlin, Robert Allard,
Margaret Lamson, Arthur Nickless, Jr.,
Robert Preston, John Bohenko,
Executive Hangar, LLC, Airbill, Inc.,
High Tech Hangar Corp., High Tech Aircraft Corp.,
and TXB Corp.,
     Defendants


                         O R D E R


     Pan American Airways Corp. ("Pan Am") brings this action

against Pease Development Authority and its individual members

(collectively, "PDA"), seeking damages for alleged violations of

its constitutionally protected right to equal protection.  See

generally 42 U.S.C. § 1983.  Pan Am also advances several state

common law causes of action against PDA, as well as Executive

Hangar, LLC, two of Executive's members, and those members'

subsidiaries (collectively, "Executive"), over which it asks the

court to exercise supplemental jurisdiction.  Defendants move to

dismiss all claims set forth in Pan Am's complaint. Pan Am objects.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002).

Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's bald assertions or conclusions of law. See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations

2

in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted). See also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

## Background

Accepting the allegations set forth in Pan Am's complaint as true, the material facts are as follows.

Pease Development Authority was created pursuant to N.H. Rev. Stat. Ann. ("RSA") 12-G to "ensure the proper planning and optimal use of" the land and airport facility located at the former Pease Air Force Base, now known as the Pease International Tradeport (the "Airport"). RSA 12-G:1. PDA is governed by a board of directors comprised of seven members, RSA 12-G:4, and is "a public instrumentality," exercising authority that, by statute, is deemed to be "the performance of public and essential governmental functions of the state," RSA 12-G:3 I. In the parlance of constitutional tort law, then, PDA is a "state actor."

3

In February of 1997, PDA sublet a tract of land at the Airport to Tyco International Ltd. Under that lease, Tyco was permitted to construct an aviation fuel storage facility and corporate aircraft hangar. Tyco was also authorized to fuel aircraft and support vehicles owned or operated by it, subject to the provisions of various regulations implemented by PDA.

Approximately nine months later, PDA adopted "Minimum Standards for Commercial and Noncommercial General Aviation Operators" at the Airport. See Complaint, Exhibit A. Among other things, those Minimum Standards were adopted in an effort to ensure that "general aviation activities at the Airport are conducted in a safe, fair, and equitable manner, in accordance with PDA, state, and federal standards." Id. at para. 1.01.

The Minimum Standards distinguish between "Noncommercial Operators" and "general aviation Commercial Operators." Among other restrictions imposed upon Noncommercial Operators is the provision that they may not "acquire, store, or dispense fuel in connection with the operation of Aircraft other than the Aircraft owned, leased, or otherwise operated by the Noncommercial

4

Operator." Minimum Standards at para. 5.02(b) (emphasis supplied). In other words, Noncommercial Operators are not permitted to sell aviation fuel to third parties, but they are permitted to "self-fuel." Commercial Operators, on the other hand, are not permitted to self-fuel. Consequently, unless a Commercial Operator wishes to purchase aviation fuel from a third party, it may self-fuel only if it first meets the Minimum Standards' requirements applicable to Full-Service Fixed Base Operators ("FBO's"). FBOs are entities authorized to store and sell aviation fuel.[1]

In 1998, Pan Am sought permission from PDA to fuel its own aircraft at the Airport. At the time, Tyco had already been granted the right to "supply its own fuel from a fuel storage facility located on the Premises and to fuel aircraft and accessory equipment or vehicles owned or operated" by Tyco. Complaint, Exhibit B, Sublease Between PDA and Tyco International at para. 9.10. Nevertheless, Pan Am says PDA told it that,

---

[1] The Minimum Standards define "Full-Service Fixed Base Operator" as a "general aviation Commercial Operator that is required to offer for sale to the public a range of basic and essential general aviation services and products." Id. at para. 1.02(j) (emphasis in original).

5

pursuant to the recently-enacted Minimum Standards, only FBO's were permitted to dispense fuel at the Airport and that PDA had denied similar requests from other entities seeking permission to "self-fuel." In reliance upon those representations, Pan Am says it purchased the existing FBO at the Airport and created "Pan Am Services" to provide the services required of FBO's by the Minimum Standards (e.g., general aviation fuel and oil sales, aircraft deicing, aircraft recovery, etc.).

Initially, Pan Am services provided aviation fuel to its own aircraft and sold fuel to other aircraft at the Airport, including three planes owned and/or operated by Airbill, High Tech Aircraft, and Tyco Healthcare. Subsequently, however, Tyco Healthcare and the parent companies of Airbill (TXB Corp.) and High Tech Aircraft (High Tech Hangar) formed Executive. In February of 2003, with PDA's approval, Tyco International assigned its sublease to Executive. Accordingly, Executive acquired Tyco International's contractual right (which pre-dated the adoption of the Minimum Standards) to store aviation fuel at the Airport and to self-fuel its aircraft. See Complaint, Exhibit B at para. 9.10. Shortly thereafter, Executive began

6

providing fuel (from its own on-site storage facility) to the three planes which had previously purchased fuel from Pan Am.

In March of 2003, Pan Am filed this action, claiming that Executive had dispensed fuel to Airbill, High Tech Aircraft, and Tyco Healthcare nine times during the previous month. It claims, among other things, that, by requiring Pan Am to meet the requirements of an FBO in order to dispense fuel at the Airport (rather than honoring its request to self-fuel), while permitting Executive to dispense fuel without meeting those requirements, PDA violated Pan Am's constitutionally protected right to equal protection. Specifically, Pan Am claims that by permitting Executive:

> to store aviation fuel and dispense it to aircraft other than those owned, leased, or operated by [it], without becoming an FBO and assuming the significant additional obligations of an FBO, in violation of the Minimum Standards promulgated by PDA, PDA and its individual members, acting under color of state law, intentionally and/or purposefully discriminated against Pan Am and Pan Am Services as a similarly-situated dispenser of aircraft fuel, thereby . . . denying Pan Am and Pan Am Services equal protection of the law in violation of the Fourteenth Amendment.

Complaint at para. 34. In short, Pan Am claims PDA discriminated by enforcing the Minimum Standards against it, while allowing Executive to operate without regard to those standards, and/or by denying Pan Am's request to self-fuel, while permitting Executive to do just that.

**Discussion**

I. <u>Pan Am's Equal Protection Claim</u>.

Pan Am is a commercial airline which, among other things, transports members of the general public for a fee. It is, therefore, a "Commercial Operator," as that term is used in the Minimum Standards. <u>Id.</u> at para. 1.02(e). Unlike Executive, Pan Am is not a "Noncommercial Operator," which is defined as "an entity or governmental agency which maintains a facility or provides a general aviation service <u>solely for its own benefit</u>, and not for the benefit of the public." <u>Id.</u> at para. 1.02(r) (emphasis supplied). Consequently, pursuant to the Minimum Standards, Pan Am could not avail itself of the "self-fueling" option made available exclusively to Noncommercial Operators. See <u>id.</u> at para. 5.02(b).

8

So, if Pan Am wished to operate a commercial aviation enterprise from the Airport, it faced a choice: either become an FBO and acquire the right to self-fuel (as well as the right and obligation to sell aviation fuel to third parties); or purchase fuel from an existing FBO. It chose the former, presumably concluding that it was the most cost-effective option. Pan Am now complains that, having expended the substantial sums necessary to obtain and operate an FBO, PDA is discriminating against it by allowing Executive to fuel aircraft it (allegedly) neither owns nor operates, and without having been required to meet the eligibility requirements of an FBO.

Central to Pan Am's claim is the assertion that Executive (a limited liability corporation) is legally distinct from its individual members. Consequently, says Pan Am, Executive does not "own or operate" the aircraft owned or operated by its members (or those members' subsidiaries). It follows, then, that Pan Am claims Executive is not "self-fueling" those aircraft, but is instead storing and providing fuel for aircraft owned by third parties, in violation of the Minimum Standards (which permit only

9

FBO's to store and provide fuel for aircraft owned or operated by third parties).  See Complaint at para. 30.

To state a viable claim that it was denied equal protection, Pan Am must allege that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  See also Hoffman v. City of Warwick, 909 F.2d 608, 621-22 (1st Cir. 1990) ("Where a statutory scheme adopts a classification that neither burdens a suspect class nor impinges on a fundamental right, the classification will withstand an Equal Protection challenge if it is rationally related to a legitimate state purpose.")  Additionally, Pan Am's complaint must, at a minimum, articulate some "motive to explain why [PDA] would treat [it] arbitrarily or irrationally."  Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002).

Pan Am's complaint fails to articulate a viable equal protection claim because, among other things, it fails to adequately allege that PDA treated it and a "similarly situated"

entity differently. Pan Am is a commercial airline, which maintains a fleet of aircraft and support vehicles, and (both directly and through its affiliates) operates numerous domestic and international flights for fee-paying members of the public. Executive, on the other hand, is a "Noncommercial Operator," which maintains and operates (through its members and their subsidiaries) three non-commercial airplanes.

Notwithstanding its claims to the contrary, it is not sufficient for Pan Am to focus exclusively on the fact that both it and Executive store and dispense aviation fuel at the Airport. That superficial similarity in one aspect of their activity simply does not make the two entities "similarly situated" for purposes of the Equal Protection Clause. As the Court of Appeals for this circuit has observed, "The formula for determining whether individuals or entities are 'similarly situated' for equal protection purposes is not always susceptible to precise demarcation." Barrington Cove LP v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001). Nevertheless, the court has articulated a generalized test to determine whether two entities are "similarly situated."

> [Plaintiffs'] obligation [is] to identify and relate specific instances where persons <u>situated similarly in all relevant aspects</u> were treated differently, instances which have the capacity to demonstrate that the [plaintiffs] were singled out for unlawful oppression. . . . <u>The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated</u>. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

<u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir. 1989) (emphasis supplied) (citations and internal punctuation omitted).

Here, rather than comparing apples to apples, Pan Am seeks to compare "plums to pomegranates." <u>Perex-Guzman v. Gracia</u>, __ F.3d __, 2003 WL 2230926 at *11 (1st Cir. Oct. 9, 2003). The vast differences between Executive and Pan Am render untenable any effort to assert that those entities are, for Equal Protection purposes, "similarly situated."

12

Moreover, even if Pan Am and Executive could be said to be "similarly situated" insofar as they both store and dispense aviation fuel at the Airport, nothing in Pan Am's complaint suggests that PDA lacked a rational basis for treating Commercial Operators and Noncommercial Operators differently. And, more specifically, Pan Am's complaint fails to suggest that PDA's decision to permit Executive to store and dispense fuel (exclusively to aircraft owned or operated by it, its members, or their subsidiaries) lacked a rational basis. In light of the Minimum Standard's "Statement of Purpose," id. at para. 1.01, it is not irrational for PDA to establish different standards and rules of conduct for Commercial Operators and Noncommercial Operators. It is, for example, entirely reasonable for PDA to demand that those entities using the Airport for commercial gain dedicate greater resources to improve the Airport facility and assist in making general aviation support services available to others using that facility (e.g., ground handling, aircraft recovery and deicing, etc.). That rational distinction drawn between Commercial Operators and Noncommercial Operators is enough to defeat Pan Am's claim. See, e.g., Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 146 (1st Cir.) ("Given the

[challenged regulation's] stated purpose . . ., and the specifications throughout that appear to intend to further that goal, it is at least 'plausible' that [the regulation] is rationally related to health and safety considerations. Since equal protection analysis does not subject legislative choice to courtroom factfinding, and a court may uphold such legislation on the basis of rational speculation unsupported by evidence or empirical data, we need go no further.") (citations and internal punctuation omitted), cert. denied, 534 U.S. 1021 (2001). See also Dandridge v. Williams, 397 U.S. 471, 485 (1970) ("a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.") (citation and quotation marks omitted).

Even aside from the fact that Executive, unlike Pan Am, is a Noncommercial Operator, Executive also succeeded to the contractual rights of Tyco International (which rights predated Pan Am's establishment of a presence at the Airport). Those

14

contractual rights allowed Executive to maintain and operate a fuel storage facility located on a portion of the Airport property.  Again, those pre-existing contractual rights to store and, on a limited basis, dispense aviation fuel, provide PDA with an additional rational basis to treat Executive and Pan Am differently.

Finally, to the extent Pan Am might be basing its Equal Protection claim on an assertion that PDA inequitably (or selectively) enforced the Minimum Standards by allowing Executive (a Noncommercial Operator) to provide aviation fuel to aircraft it (allegedly) neither owns nor operates (i.e., the aircraft owned by Executive's members and their subsidiaries), that claim fails as well.  As the court of appeals has made clear, "departures from administrative procedures established under state law or the denial of a permit based on reasons illegitimate under state law, do not normally amount to a violation of the [plaintiff's] federal constitutional rights."  PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991).  In other words, that Pan Am disagrees with PDA's apparent view that Executive "owns or operates" the three airplanes at issue

15

(thereby allowing Executive, under the Minimum Standards, to self-fuel those planes), does not give rise to a viable claim that PDA has deprived Pan Am of its constitutionally protected right to equal protection.

II. Pan Am's State Law Claims.

In counts two through five of its complaint, Pan Am advances several state common law claims, over which it asks the court to exercise supplemental jurisdiction. Complaint at para. 17. See also 28 U.S.C. § 1367. Section 1367 provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). To assist district courts, the Court of Appeals for the First Circuit has identified the following

16

additional factors that should be considered when determining whether to exercise supplemental jurisdiction over state law claims: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity.  See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  With regard to principles of fairness and comity, the Supreme Court has observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

Given that this case is "at an early stage in the litigation," Camelio, 137 F.3d at 672, and in the interests of both comity and fairness to the parties, the court declines to exercise supplemental jurisdiction over the state law claims in counts two through five of Pan Am's complaint.

17

## Conclusion

Pan Am's complaint fails to adequately allege: (1) that Pan Am and Executive are "similarly situated" for purposes of an Equal Protection claim; or (2) that PDA lacked a rational basis to treat those two entities differently. Accordingly, Pan Am's Equal Protection claim must be dismissed. See e.g., Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d 150, 156-57 (1st Cir. 2003) (affirming dismissal of equal protection claim on grounds that complaint failed to adequately allege that plaintiff was treated differently from others who were "similarly situated"); Hoffman, 909 F.2d at 622 (affirming dismissal of plaintiffs' equal protection claims because, among other things, "the classification at issue reflects . . . rational considerations").

For the foregoing reasons, and for the reasons set forth in defendants' memorandum in support of their motion to dismiss, the court holds that Pan Am's complaint fails to adequately allege the essential elements of a viable Equal Protection claim. Defendants' motion to dismiss (document no. 5) is, therefore, granted in part and denied in part. Count one of Pan Am's complaint is dismissed for failure to state a viable claim. With

18

regard to Pan Am's state law claims, the court declines to exercise supplemental jurisdiction and those claims (counts two through five) are dismissed without prejudice.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                        _____
                                          Steven J. McAuliffe
                                          United States District Judge

October 29, 2003

cc:  R. Matthew Cairns, Esq.
     Daniel J. Mullen, Esq.
     Roscoe Trimmier, Jr., Esq.