DePoutot v. Raffaelly                    CV-04-038-SM  03/03/05
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE


Robert DePoutot,
      Plaintiff

      v.                                  Civil No. 04-38-SM
                                          Opinion No. 2005 DNH 039
John Raffaelly,
      Defendant


                        O R D E R


      Plaintiff, Robert DePoutot, brings this action against John

Raffaelly, a police officer for the Town of Northfield, New

Hampshire.  DePoutot claims that Officer Raffaelly violated his

Fourteenth Amendment right to substantive due process by

unreasonably conducting a post-arrest investigation.  See

generally 42 U.S.C. § 1983.  He also asserts state law claims for

both negligent and intentional infliction of emotional distress,

over which he asks the court to exercise supplemental

jurisdiction.  He has sued Officer Raffaelly in his individual

capacity and seeks compensatory and punitive damages, as well as

costs and attorney fees.

Officer Raffaelly moves for summary judgment, claiming that, as a matter of law, he did not violate plaintiff's substantive due process rights. Alternatively, Raffaelly asserts that even if he did violate plaintiff's constitutional rights, he is entitled to qualified immunity. Plaintiff objects.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

2

## Background

On November 18, 2001, Officer Raffaelly arrested plaintiff for driving while intoxicated and took him to the Laconia police station. Plaintiff does not deny that Raffaelly had probable cause to make the arrest. After being informed of his rights under state law with regard to testing for blood alcohol content, see N.H. Rev. Stat. Ann. ("RSA") 265:87, plaintiff submitted to a breath test. The parties disagree as to whether (or, perhaps more accurately, when) plaintiff asked that he be allowed to submit to a blood test instead of a breath test.[1]

The Laconia police station is equipped with an "Intoxilyzer 5000" machine for testing blood alcohol content. That machine

---

[1]  This dispute does not, however, seem to involve a "material fact." When, or even whether, plaintiff asked to submit to a blood test does not appear to be particularly relevant, other than to demonstrate plaintiff's apparent willingness to submit to some form of testing. New Hampshire law provides him with the right to obtain additional testing, such as a blood test, at his own expense. See RSA 265:86. And, as discussed below, plaintiff availed himself of that right. But, while a person plainly has the right to choose the type of additional testing he or she wishes to obtain, he or she does not have the right to dictate to the arresting officer which type of testing shall be administered in the first instance. That decision is committed to the arresting officer. See RSA 265:92 I.

takes two samples of the subject's breath and analyzes each for the presence of alcohol. Based on those samples, it calculates the subject's blood alcohol content, or "BAC." To complete the test, the subject must provide two breath samples, the second of which must be provided within two-and-one-half minutes of the first. To provide valid samples, the subject must blow continuously into the machine for about four seconds (providing approximately one liter of air) for each.

Under New Hampshire law, a refusal to submit to a breath test when, as here, police had probable cause to arrest, results in an administrative license suspension, regardless of whether the suspect is later convicted or acquitted of the driving while intoxicated charge. See RSA 265:92. A police officer may determine that a suspect has "refused" to submit to a breath test based upon either the suspect's statements, his conduct, or both. See Jordan v. State, 132 N.H. 34, 36 (1989) ("A driver's entire conduct, not merely words expressing consent or refusal, indicate whether he has actually refused the test. We hold, moreover, that a driver must comply with all the procedures necessary to produce accurate measurements of breath-alcohol levels, and that

4

he refuses to submit to the test if he expresses consent while intentionally preventing accurate testing.").

Here, while plaintiff's demeanor was outwardly cooperative and compliant, he demonstrated apparent difficulty in providing (or, perhaps, refused to provide) the two required four-second breath samples. Initially, he provided a small sample of his breath by blowing into a tube connected to the Intoxilyzer, but he would stop short of providing a full sample. This occurred twice and, with each false start, Officer Raffaelly instructed Depoutot on the proper means by which to provide a sample. After the second failed attempt, Raffaelly told plaintiff that if he did not provide the required sample, Raffaelly was going to treat plaintiff's conduct as a refusal to submit to the test. Plaintiff then successfully provided an adequate sample for the first round of testing.

With that, the Intoxilyzer analyzed DePoutot's breath sample and calculated that his BAC was 0.04 percent (one half the legal limit for operating a motor vehicle in New Hampshire). As was his practice, however, Officer Raffaelly did not tell plaintiff

5

the result of that preliminary test.  Instead, he informed plaintiff that he must provide a second sample within two-and-one-half minutes.  Again, however, plaintiff demonstrated some difficulty in providing (or was unwilling to provide) the sample.  With each failed effort, DePoutot was instructed on the proper means by which to provide a sample, and was warned that if he did not comply he would be deemed to have refused to take the test.  Finally, after DePoutot's fourth failed effort to provide the second breath sample, Officer Raffaelly pressed the "R" key on the machine, indicating that DePoutot had refused to provide a breath sample.  Plaintiff points out, however, that the two-and-one-half minute window allowed by the Intoxilyzer to provide a second sample had not yet lapsed when Officer Raffaelly determined that his conduct evidenced a refusal to submit to the test.

Plaintiff says that during the course of attempting to provide the required breath samples, he repeatedly told Officer Raffaelly that he was having a problem breathing, claims that he was "coughing" and "gagging," and says he informed Raffaelly that he would prefer to submit to a blood test.  Officer Raffaelly, on

the other hand, says DePoutot never coughed or gagged while attempting to provide the samples and appeared to have no difficulty breathing.

The parties agree that plaintiff never informed Officer Raffaelly of any medical condition or illness which might preclude him from giving an adequate sample. And, says Officer Raffaelly, plaintiff requested a blood test only <u>after</u> Raffaelly deemed his conduct to evidence an unwillingness (rather than an inability) to provide an adequate breath sample, constituting a refusal to submit to the test. Given the divergence of the parties' recollections of the relevant events, the court will, for purposes of ruling on Raffaelly's motion for summary judgment, assume that DePoutot's recollection of the facts in question is accurate.

After he was released from custody, at approximately 4:40 a.m., DePoutot went to a local hospital and had blood drawn. Subsequent testing of that blood revealed a BAC of approximately 0.01 percent. A "retrograde analysis" of that sample suggested that plaintiff's BAC, at the time of his arrest, was

approximately 0.03 percent (well below New Hampshire's legal limit of 0.08 percent).

According to plaintiff's complaint, the driving while intoxicated charge against him was dismissed. Complaint at para. 24. But, on November 27, 2001, the New Hampshire Department of Safety administratively suspended his driver's license for failing to submit to the BAC test. See RSA 265:92. The license suspension became effective on December 17, 2001, and, because DePoutot had a prior conviction for driving while intoxicated, a two year suspension was imposed.

Through counsel, plaintiff requested an administrative hearing on the issue, which was held on January 4, 2002. At that hearing, Dr. Philip Maiorano testified that DePoutot suffered from occupationally induced asthma. Dr. Maiorano also testified that although plaintiff's condition probably did not manifest itself in any outwardly visible signs which might have been observed by Officer Raffaelly (e.g., shortness of breath or difficulty breathing), it likely prevented him from providing the required four-second breath samples for testing by the

8

Intoxilyzer. Notwithstanding that testimony, however, the hearing officer concluded that Officer Raffaelly had properly deemed plaintiff's conduct to constitute a refusal to submit to the breath test and, therefore, upheld the administrative suspension of plaintiff's license.

Plaintiff appealed that decision to the state superior court. On July 3, 2002, the court reversed the hearing officer's decision, finding that the totality of the evidence presented at the administrative hearing suggested that plaintiff's medical condition might have prevented him from supplying the required breath samples. Accordingly, the court held that there was insufficient evidence to support the conclusion that DePoutot had refused to submit to the test. His driving privileges were restored.

Subsequently, plaintiff filed this suit, in which he claims that, by prematurely ending the breath test (i.e., before the two-and-one-half minute period afforded by the testing equipment had lapsed), and by deeming his conduct to have amounted to a "refusal" to take the test, Officer Raffaelly "deliberately

9

manipulat[ed] the evidence gathering process in order to cause plaintiff harm." Complaint at para. 27. In so doing, says plaintiff, Raffaelly so flagrantly and grotesquely abused his governmental authority that he violated plaintiff's constitutionally protected right to substantive due process. Plaintiff also claims that Raffaelly intentionally and negligently caused him to suffer emotional distress.[2]

## Discussion

I. Were DePoutot's Constitutional Rights Violated?

The Supreme Court has directed that when, as is the case here, a qualified immunity defense is asserted in a constitutional tort case, courts should first determine whether the plaintiff's constitutional rights were, in fact, violated. Only if it is first determined that a constitutional right was violated (or, in the case of a motion for summary judgment, that

---

[2] In response to Officer Raffaelly's motion for summary judgment, Mr. DePoutot has acknowledged that he cannot prevail on his state law claim that Raffaelly negligently caused him to suffer emotional distress. Accordingly, he does not object to the entry of judgment as a matter of law in favor of Raffaelly as to that claim. See Plaintiff's Objection to Defendant's Motion for Summary Judgment (document no. 8) at para. 34. DePoutot does, however, continue to press his state law claim for intentional infliction of emotional distress.

10

a genuine issue of material fact exists), should the court turn to the issue of qualified immunity.  See <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991).

To prevail on his claim under 42 U.S.C. § 1983, DePoutot must establish that: (1) Officer Raffaelly acted under color of state law; and (2) Raffaelly's conduct deprived plaintiff of a right secured by the Constitution or a federal statute.  See <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  The parties agree that Officer Raffaelly was acting under color of state law.  They also agree that the privilege of holding a driver's license is a legally protected property interest, which may not be suspended without due process.  The sole disputed question of law is whether, by terminating the BAC test prior to the expiration of the two-and-one-half minute testing period afforded by the Intoxilyzer, and by deeming plaintiff's conduct to constitute a refusal to submit to the test (allegedly with the intent to harm plaintiff), Raffaelly deprived plaintiff of his right to substantive due process.

11

Recent opinions issued by the Supreme Court make clear that in cases involving claimed violations of substantive due process rights, different methods of judicial analysis are implicated, depending on whether the challenged governmental conduct is legislative or executive in character. See generally County of Sacramento v. Lewis, 523 U.S. 833 (1998); Washington v. Glucksberg, 521 U.S. 702 (1997). So, for example, Justice Souter, writing for the Court in Lewis, observed that: "While due process protection in the substantive sense limits what the government may do in both its legislative and executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." Lewis, 523 U.S. at 846 (citations omitted).

The Court of Appeals for the Fourth Circuit, in an en banc opinion, summarized those differing analytical approaches as follows:

> In executive act cases, the issue of fatal arbitrariness should be addressed as a "threshold question," asking whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." [Lewis, 523

12

U.S. at 847 n.8].  If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest.  If it does meet the threshold test of culpability, inquiry must turn to the nature of the asserted interest, hence to the level of protection to which it is entitled.  See id.

If the claimed violation is by legislative enactment (either facially or as applied), analysis proceeds by a different two-step process that does not involve any threshold "conscious-shocking" inquiry.  The first step in this process is to determine whether the claimed violation involves one of "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and traditions,'" Glucksberg, 521 U.S. at 720-721.  The next step depends for its nature upon the result of the first.  If the asserted interest has been determined to be "fundamental," it is entitled in the second step to the protection of strict scrutiny judicial review of the challenged legislation.  See id. at 721.  If the interest is determined not to be "fundamental," it is entitled only to the protection of rational-basis judicial review.  See id. at 728.

Hawkins v. Freeman, 195 F.3d 732, 738-39 (4th Cir. 1999) (en banc) (footnote omitted).

In this case, DePoutot does not challenge the New Hampshire statute authorizing the suspension of his driver's license. Instead, he challenges only Officer Raffaelly's determination that he refused to submit to a BAC test.  Accordingly, DePoutot's substantive due process claim is properly viewed as an "executive

13

act" case and, therefore, is governed by the analytical framework established in Lewis. That is to say, the issues presented by DePoutot's substantive due process claim are: (1) whether Officer Raffaelly's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," Lewis, 523 U.S. at 847 n.8; and, if so, (2) the nature of the asserted interest that was (allegedly) violated by Raffaelly's conduct and, necessarily, the level of protection to which it is entitled.[3]

DePoutot's substantive due process claim fails, as a matter of law, at the first level of inquiry: even if DePoutot was "coughing" and "gagging" while he was attempting to provide the breath samples, and even if DePoutot expressed a preference for submitting to a blood test, Raffaelly's determination that

---

[3] In his memorandum in opposition to summary judgment, plaintiff suggests that he might prevail on his substantive due process claim by either demonstrating that Raffaelly engaged in conscience-shocking behavior or by "simply prov[ing] that defendant deprived plaintiff of a protected interest, his driver's license." Id. at para. 3. Those alternate theories appear to be based upon First Circuit precedent that pre-dates the recent Supreme Court opinions in this area. They also seem to inappropriately blend the distinct analytical steps articulated by the Court for "executive act" and "legislative act" cases.

DePoutot had "refused" to submit to the breath test was not so extreme or so outrageous as to shock the contemporary conscience. See Lewis, 523 U.S. at 848-49. Had Raffaelly intended, from the outset, to unjustifiably cause the administrative suspension of DePoutot's license, he would not have indulged DePoutot's numerous failed efforts to provide the required four-second breath samples. He would have simply declared DePoutot's first (or even his second or third) failed effort to constitute a refusal to submit to the test. He did not. Instead, with each failed effort by DePoutot to provide the requisite sample, Raffaelly instructed him on the proper means by which to give the sample and warned him in advance that failure to do so would be deemed a refusal.

Even after the first sample was analyzed and revealed a BAC of 0.04 percent, Raffaelly did not declare DePoutot's subsequent conduct to constitute a refusal to submit to the test until DePoutot failed to provide the required second breath sample four times. At that point, declaring DePoutot's conduct to be a refusal to submit to the BAC test, even if done with full knowledge of the legal consequences of that decision (and even if

15

done with the intent that it result in the suspension of DePoutot's driver's license), is not so outrageous an abuse of governmental authority as to shock the contemporary conscience. See, e.g., Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617 (1st Cir. 2000) (although police officers plainly abused their governmental authority when they repeatedly threatened plaintiff, took her property without any legal basis, arrested her based upon wholly fabricated charges, and then testified falsely against her, they did not violate her substantive due process rights); Pittsley v. Warish, 927 F.2d 3 (1st Cir. 1991) (police officers' alleged threats to kill children's mother, and their statement to children that if the police caught their father they would "never see him again," while despicable and wrongful, did not rise to the level of a substantive due process violation).

Police Officers, like Raffaelly, undoubtedly witness a wide variety of ploys by which suspects attempt to evade producing the required four-second breath samples for analysis by the Intoxilyzer. See, e.g., Jordan, 132 N.H. at 35-36 (subject burped on two occasions immediately prior to being asked to provide a breath sample and, for that reason, was deemed to have

16

refused to submit to the test).  Here, Officer Raffaelly allowed at least six separate failed efforts on DePoutot's part (allegedly accompanied by coughing and gagging) before finally deciding that he was purposefully refusing to submit to the test.  Such patience, it would seem, went well beyond that which should be expected.  See id. at 37 ("We reject the plaintiff's contention that this [administrative] rule does not authorize the police to find a refusal after a driver has twice frustrated the administration of an accurate test by burping.  The regulation requires the police to give a driver a second chance to complete an observation period [prior to the administration of the test].  The police need not give a driver a third chance.").

Plaintiff makes much of the fact that Raffaelly terminated the test while time still remained in the two-and-one-half minute window within which to provide the second breath sample.  But nothing suggests - not precedent and not common senses - that a police officer must afford a suspect the full period in which the machine can validly accept a sample before deciding that the suspect has, through his or her conduct, demonstrated an unwillingness to submit to the test.  The time in which the

17

machine must receive a second breath sample is a limitation of the analytical process; it is not a period of time afforded the subject for reflection and introspection, during which he might revisit his decision to submit to the test.

The basic thrust of plaintiff's claim seems to be his assertion that, once Officer Raffaelly saw the results of the preliminary (first sample) breath test, he realized that DePoutot could not be successfully prosecuted for driving while intoxicated. So, says plaintiff, Raffaelly purposefully terminated the testing procedure prematurely, with full knowledge (and, in fact, the intention) that it would result in an administrative suspension of DePoutot's driver's license. In simple terms, plaintiff asserts that once Raffaelly realized that one avenue for punishing plaintiff had been closed, he decided to open another. (It should be noted, however, that DePoutot points to no evidence which might support even an inference that Raffaelly intended to harm or punish him.) That conduct, when combined with a malicious intent (if true), says plaintiff, amounts to an unconscionable abuse of governmental authority, in

18

violation of his constitutional right to substantive due process.

Given the totality of the circumstances presented by this case, and even viewing the disputed facts in the light most favorable to DePoutot, Raffaelly's failure to afford plaintiff the full two-and-one-half minutes allowed by the testing equipment, given what to him would reasonably appear to be repeated obstructionism, does not rise to the level of conscious-shocking behavior. This is particularly true given the undisputed fact that DePoutot did not inform Raffaelly of any medical condition which might prevent him from providing the required breath samples. In fact, it appears that even DePoutot was unaware that he suffered from any physical impediment that might interfere with his ability to properly complete the testing procedure. Absent knowledge of DePoutot's medical condition, the most plausible rational explanation for his conduct was that he was trying to appear willing to take the test while, at the same time, doing what he could to thwart the officer's ability to actually conduct that test.

19

Plainly, Officer Raffaelly's decision to terminate the test was not made in a vacuum; DePoutot's own conduct - his serial inability (or refusal) to submit to what is, for the vast majority, a decidedly simple and straight-forward test - prompted that decision.  Given the circumstances presented and the facts available to him at the time, Raffaelly's conclusion was the most reasonable one: that DePoutot's (alleged) coughing and gagging was a ruse, meant to feign an inability to complete the test, while appearing to be cooperative, when in fact his purpose was to avoid producing any valid breath samples.  There was no other plausible explanation for DePuotot's conduct under the circumstances known to Raffaelly.  At best, the subsequently produced medical evidence suggests that Officer Raffaelly might have been mistaken; it does not, however, support even an inference that his conduct amounted to grotesque abuse of governmental authority, motivated by spite, ill will, or malice.

The Supreme Court has made clear that the constitutional guarantee of due process:

> does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.  In Paul v. Davis, for example, we

20

> explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in Daniels v. Williams, we reaffirmed the point that "our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.

Lewis, 523 U.S. at 848. "While the measure of what is conscience shocking is no calibrated yard stick," id. at 847, Officer Raffaelly's conduct in this case fell very far short of that which is required to form the basis of a viable substantive due process claim. As to count one of plaintiff's complaint, then, Officer Raffaelly is entitled to judgment as a matter of law.

II. Qualified Immunity.

Even if one could plausibly conclude that Officer Raffaelly did violate DePoutot's constitutional rights by "prematurely" declaring an end to the BAC test, and by determining that DePoutot's conduct amounted to a refusal to submit to the test, he would still be entitled to the protections afforded by qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate

21

clearly established statutory or constitutional rights."  Harlow

v. Fitzgerald, 457 U.S. 800, 818 (1982).


In determining whether a defendant is entitled to qualified

immunity, the court must engage in a two-step inquiry.

> The first prong is whether the constitutional right in
> question was clearly established at the time of the
> alleged violation.  In the second prong, the court
> employs an "objective reasonableness" test in
> determining whether a reasonable, similarly situated
> official would understand that the challenged conduct
> violated the established right.

Napier v. Town of Windham, 187 F.3d 177, 183 (1st Cir. 1999)

(citation omitted).  When making those inquiries, "the court

should ask whether the agents acted reasonably under settled law

in the circumstances, not whether another reasonable, or more

reasonable, interpretation of the events can be constructed . . .

years after the fact."  Hunter v. Bryant, 502 U.S. 224, 228

(1991).


At the first stage of that inquiry - determining whether the

constitutional right at issue was "clearly established" - courts

must "define the right asserted by the plaintiff at an

22

appropriate level of generality." <u>Brady v. Dill</u>, 187 F.3d 104, 115 (1st Cir. 1999). To qualify as a clearly established right, "the law must have defined the right in a quite specific manner, and . . . the announcement of the rule establishing the right must have been unambiguous and widespread, such that the unlawfulness of particular conduct will be apparent <u>ex</u> <u>ante</u> to reasonable public officials." <u>Id.</u>, at 116. <u>See also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) ("[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. <u>This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition</u>.") (emphasis supplied); <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) ("[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). As the Supreme Court recently observed:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is

23

> sometimes difficult for an officer to determine how the relevant legal doctrine, [here substantive due process], will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular [action] is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205.


One question presented by this case is, then, the level of specificity with which it is appropriate to define the constitutional right plaintiff claims was violated. All can agree that the right not to be subjected to "conscience-shocking" abuses of governmental authority was, when DePoutot was arrested, clearly established. However, "[a] reasonable official's awareness of the existence of an abstract right, such as a right to be free of [conscience-shocking abuses of governmental authority], does not equate to knowledge that his conduct infringes the right." Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997) (emphasis in original). If the constitutional right DePoutot claims was infringed must necessarily be defined more precisely, it seems plain that such a right was not "clearly established" at the time of his arrest.

24

In his memorandum in opposition to summary judgment, plaintiff suggests that his right to continue trying to provide the required second breath sample, without interruption by Raffaelly, for the full two-and-one-half minutes provided by the Intoxilyzer, was "clearly established" at the time of his arrest. Viewed somewhat differently, DePoutot necessarily asserts that, at the time of his arrest, an objectively reasonable and well-trained police officer would have clearly understood that, by "prematurely" terminating the BAC test under the circumstances presented in this case, he was abusing his governmental authority in such an extreme and egregious manner that it would shock the contemporary conscience and, therefore, constitute a violation of the subject's constitutionally protected rights.

In support of that proposition, however, plaintiff simply points out that both Lewis, supra, and Cruz-Erazo, supra, were decided prior to the date of his arrest. See Plaintiff's memorandum at para. 25. But, neither of those opinions "clearly establishes," with the requisite degree of specificity, the constitutional right that DePoutot claims was infringed. Instead, those opinions merely stand for the general, well-

25

established principal that the Constitution is violated when a governmental official abuses his or her authority in a manner that is so extreme and so outrageous as to shock the conscience.

As the Court of Appeals for the First Circuit has observed, "the announcement of the rule establishing the right must have been unambiguous and widespread." Dill, 187 F.3d at 116. Here, plaintiff has failed to identify any precedent suggesting that the Constitution provides a right not to have a BAC test terminated based upon the subject's apparent unwillingness to provide a breath sample, prior to the close of the testing window limiting the test equipment's capability of providing a valid result. Consequently, even if Raffaelly had violated DePoutot's substantive due process rights by "prematurely" terminating the BAC test, he would still be entitled to the protections afforded by qualified immunity.

III. Plaintiff's Remaining State Law Claim.

As to the sole remaining claim in plaintiff's complaint - his assertion that Raffaelly intentionally caused him to suffer emotional distress - the court declines to exercise its

26

supplemental jurisdiction.  See generally 28 U.S.C. § 1367.

Section 1367 provides that the court may decline to exercise

supplemental jurisdiction over a plaintiff's state law claim

when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  To assist district courts, the Court of

Appeals for the First Circuit has identified the following

additional factors that should be considered when determining

whether to exercise supplemental jurisdiction over state law

claims: (1) the interests of fairness; (2) judicial economy; (3)

convenience; and (4) comity.  See Camelio v. American Fed'n, 137

F.3d 666, 672 (1st Cir. 1998).  With regard to principles of

fairness and comity, the Supreme Court has observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between

27

the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

Given that this case is "at an early stage in the litigation," Camelio, 137 F.3d at 672, and in the interests of both comity and fairness to the parties, the court declines to exercise supplemental jurisdiction over the state law claims in count two of plaintiff's complaint.

## Conclusion

With the benefit of hindsight, particularly in light of the expert medical testimony presented by DePoutot at his administrative hearing, it seems that DePoutot may suffer from an asthmatic condition which might have precluded him from providing the two requisite breath samples for analysis by the Intoxilyzer. That information, however, was not known to Officer Raffaelly (or, it seems, even Mr. DePoutot) when the relevant facts at issue transpired. And, even crediting DePoutot's recollection of

28

the material facts as being more accurate than that of Raffaelly, those facts do not, as a matter of law, give rise to a viable substantive due process claim.  Moreover, even if it could be said that Raffaelly did violate DePoutot's right to substantive due process, Raffaelly would still be entitled to the protections afforded by qualified immunity.

Defendant's motion for summary judgment (document no. 6) is granted in part, and denied in part.  To the extent it seeks judgment as a matter of law as to count one (substantive due process violation) and count three (negligent infliction of emotional distress), that motion is granted.[4]  Defendant's motion is, however, denied with regard to plaintiff's state law claim for intentional infliction of emotional distress, which is dismissed without prejudice to refiling in state court.

---

[4]     As noted above, plaintiff concedes that defendant is entitled to judgment as a matter of law as to his state law claim for negligent infliction of emotional distress.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 3, 2005

cc:  Charles P. Bauer, Esq.
     Michael J. Sheehan, Esq.